IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAURICE CEASAR<br><br>Plaintiff<br><br>v.<br><br>CBS HEADQUARTERS COMPANY, *et al.*,<br><br>Defendants | Case No. 06-2140 RMC |

**MEMORANDUM IN SUPPORT OF DEFENDANT
COMCAST CORPORATION'S MOTION TO DISMISS**

Defendant Comcast Corporation ("Comcast") by and through its undersigned attorneys, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(5), hereby submits its Memorandum of Law in Support of its Motion to Dismiss the Complaint filed by Plaintiff Maurice Ceasar ("Plaintiff" or "Mr. Ceasar").

**I. INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiff Maurice Ceasar is an inmate in a correctional facility located in Waymart, Pennsylvania. His two page *pro se* Complaint is exceptionally confusing. However, under the most generous reading of both Mr. Ceasar's Complaint and in the Form completed pursuant to the Prison Litigation Reform Act ["PLRA"] of 1995[1], it appears that Mr. Ceasar attempts to assert a defamation claim and to seek relief pursuant to 42 U.S.C. § 1983. Mr. Ceasar cannot

---

[1] This seven page Form was included in the documents served upon Comcast with the Complaint and is displayed on P.A.C.E.R. as part of the Plaintiff's Complaint. Consequently, to give Plaintiff the benefit of all possible inferences, Comcast has treated the Form as an attachment to the Complaint that should be considered in testing the sufficiency of this Complaint. See *Mazur v. Szporer*, 2004 U.S. Dist. LEXIS (D.D.C. June 1, 2004) (ruling that the limited sources available to a court when ruling on a Rule 12(b)(6) motion include facts alleged in the complaint and documents attached to or incorporated into the complaint).

1

prove any set of facts under which he could prove a claim of defamation against Comcast or obtain relief against Comcast under 42 U.S.C. § 1983.

Although Mr. Ceasar's legal theories are not artfully composed, several aspects of his Complaint make it clear that his claims arise from news reports published on broadcast television stations. Mr. Ceasar names as defendants the four major broadcast television stations, CBS, ABC, NBC and FOX. (Complaint at p. 1.) In his Complaint, Mr. Ceasar claims that his "constitutional rights have been violated by unconfirmed reports by the news stations and newspaper columns named in this lawsuit," "news reporters on television reported a criminal broadcast that was not true about a string of felony charges that warranted me for arrest," and "there are many viewers... who watched this news coverage that can be witnesses to how I was presented to the public." (*Id.*). Although Mr. Ceasar also refers in his Complaint to "newspaper columns" and alleges that the "Washington Express, Associated Press, Today's Newspaper Association and Washington Best Newspaper Association" "printed the story with misleading information," he does not name any newspaper or other print media entity as a defendant. In the PLRA Form filed with his complaint, Mr. Ceasar claims that "[t]elevision stations (4), (5), (7), (8), and (9) reported and televised the misinformation given by the complainant," and that he "was depressed after it was shown on the 6 pm and 11 pm news." (PLRA Form at ¶¶ 1, 3.)

Mr. Ceasar never clearly identifies any specific statement in any particular broadcast news report on which he bases his claim. Nor does he clearly state what he claims was false and defamatory in any statements that were published about him. It is not clear whether he claims that he was incorrectly linked to an open criminal investigation, or that his past criminal history was inaccurately reported. In any event, he never attributes any particular statement to Comcast,

2

nor does he identify any agent of Comcast has having uttered any particular statement regarding him.

Nevertheless, even if Mr. Ceasar pled his Complaint with the particularity required for a defamation claim, he could not state a defamation claim against Comcast as a matter of law. As a cable operator, Comcast has no control over, and is not responsible for, the content of the broadcast video programming created by third-parties that Comcast retransmits, or distributes, over its cable system to its cable service subscribers. Comcast has no more liability as a distributor of video programming than a newspaper delivery person has for the content of the newspaper. In fact, Comcast is legally prohibited from altering the program related content of the broadcast signals that it receives from broadcasters such as CBS, NBC, FOX, and ABC and simultaneously retransmits to its cable service subscribers.

Mr. Ceasar also cannot prevail on his claim under 42 U.S.C. 1983 as a matter of law. Mr. Ceasar has not alleged, and cannot prove, that Comcast took any action under color of state law as required to state a claim under Section 1983.

Finally, Comcast was not properly served with Mr. Ceasar's Complaint and Summons within 120 days of the date the Complaint was filed with the Court. The Complaint should, therefore, also be dismissed under Fed. R. Civ. P. 12(b)(5).

## II. ARGUMENT

### A. Standards Applicable to Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), a motion to dismiss is appropriate in the limited circumstance where no relief could be granted under any facts that are consistent with the complaint. *Mazur v. Szporer*, 2004 U.S. Dist. LEXIS 13176, *5 (D.D.C. June 1, 2004) (quoting *Martin v. Ezeagu*, 16 F. Supp. 20, 23 (D.D.C. 1993)). The court must construe the complaint in the light most

favorable to the plaintiff and must accept as true all reasonable inferences from the facts alleged. *Id.* at *5-6. The motion must be decided on the facts alleged in the complaint alone. *Id.* at *6. In the case of *pro se* plaintiffs, as here, pleadings must be construed liberally. *Falck v. IRS*, 2007 U.S. Dist. LEXIS 42729, *4 (D.D.C. June 14, 2007) (citing *Lindsey v. United States*, 448 F. Supp. 2d 37, 44-45 (D.D.C. 2006)). This Court recently summarized the appropriate standard for Rule 12(b)(6) motions in *pro se* plaintiff cases:

> While pro se complaints are held to a less stringent standard than complaints drafted by attorneys, *see Gray v. Poole,* 348 U.S. App. D.C. 369, 275 F.3d 1113, 1116 (D.C. Cir. 2002); *Amiri v. Hilton Washington Hotel,* 360 F. Supp.2d 38, 41-42 (D.D.C. 2003), a pro se plaintiff's inferences "need not be accepted 'if such inferences are unsupported by the facts set out in the complaint.'" *Caldwell v. District of Columbia,* 901 F. Supp. 7, 10 (D.D.C. 1995) (*quoting Henthorn v. Dept. of Navy,* 308 U.S. App. D.C. 36, 29 F.3d 682, 684 (D.C. Cir. 1994)). "'A pro se complaint, like any other, must state a claim upon which relief can be granted by the court.'" Id. (*citing Crisafi v. Holland,* 211 U.S. App. D.C. 75, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

*Woodruff v. Peters*, 2007 U.S. Dist. LEXIS 34127, *7-8 (D.D.C. May 9, 2007).

### B. Plaintiff's Allegations are Insufficient to State a Claim against Comcast for Violation of 42 U.S.C. § 1983

In his Complaint, Plaintiff seeks damages under 42 U.S.C. § 1983 for financial and emotional injuries that he claims to have suffered as a result of the alleged new reports regarding him. (Complaint at p. 2). Comcast cannot be liable to Mr. Caesar under the Civil Rights Statute.

Section 1983 provides:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,* subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief

> was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (emphasis added).

According to the plain language of the statute, it applies only to state actors. "To prevail in a civil rights action under 42 U.S.C. § 1983, a plaintiff must plead and prove that the defendants, acting under color of state or D.C. law, deprived the plaintiff of a right secured by the Constitution and laws of the United States." *Edwards v. Okie Dokie*, 473 F. Supp. 2d 31, 40 (D.D.C. 2007) (footnote omitted). In *Okie Dokie*, a Section 1983 claim was dismissed on the grounds that the plaintiff's complaint did not allege or provide any evidence that the defendants were acting under color of D.C. law when they restrained the plaintiffs at a D.C. nightclub. *Id.* at 41.

Mr. Ceasar has not alleged, nor could he, that Comcast acted under color of the laws of the District of Columbia or any other state. Cable operators do not qualify as state actors subject to Section 1983 because they do not exercise powers traditionally exclusively reserved to the State, nor do they exercise functions of sovereignty. *Glendora v. Cablevision Sys. Corp.*, 893 F. Supp. 264, 269 (S.D.N.Y. 1995); *see also Glendora v. Marshall*, 947 F. Supp. 707, 712 (S.D.N.Y. 1996). The facts that cable operators are subject to state and federal regulation, or that they operate pursuant to franchises granted by local governments, does not transform their actions into state actions. *Id.* Mr. Ceasar's allegations concerning Comcast are limited, even under the most generous construction, to the claim that Comcast was involved in the publication of statements regarding Mr. Ceasar as part of the private news media. Under the plain language of Section 1983 and all applicable precedent, Mr. Ceasar's failure to allege that Comcast acted

under color of state law compels the dismissal of any claim for relief against Comcast under Section 1983.[2]

### C. Plaintiff's Defamation Claim Against Comcast Is Legally Deficient and Is Also Barred by Comcast's Obligations under Federal Law

As noted above, Mr. Ceasar's attempted defamation claim arises from alleged broadcast television news reports about him. Comcast, however, is a cable operator as opposed to a broadcaster such as defendants ABC, CBS, NBC, and FOX.[3] The term "cable operator" is defined in the Communications Act of 1934, as amended ("The Act"]), as an entity "who provides cable service over a cable system," with cable service further defined as "the one-way transmission to subscribers of video programming… and subscriber interaction… required for the selection or use of such video programming…" 47 U.S.C. § 522(5), (6) (subdivisions omitted). A cable system is "a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community." *Id.* at § 522(7).[4]

As a cable operator, Comcast is also classified under the Act as a "multichannel video programming distributor," which the Act defines as "as person such as… a cable operator… who makes available for purchase, by subscribers or customers, multiple channels of video

---

[2] Mr. Ceasar also fails to identify any rights, privileges, or immunities guaranteed to him under the Constitution or laws of the United States that he claims Comcast acted to deny him. Although he appears to claim that was wrongfully imprisoned (PLRA Form at ¶¶ 11, 13, 16), he does not allege that Comcast was responsible for prosecuting him or imprisoning him in violation of his federally secured rights. This deficiency in his Complaint also requires dismissal of his Section 1983 claim.

[3] *See, e.g., Klimas v. Comcast Cable Communications, Inc.*, 465 F.3d 271, 273 (6th Cir. 2006) (noting that Comcast is a cable company in holding that the Cable Communications Policy Act does not apply to broadband service offered by cable companies).

[4] In contrast, "[t]he term 'local commercial television station' means any full power television broadcast station, other than a qualified noncommercial education television station… *licensed and operating on a channel* regularly assigned to its community by the Commission…" 47 U.S.C. §534 (emphasis added). Comcast does not operate "on a channel" assigned by the Commission; it aggregates, and makes available for purchase for a monthly subscription fee, multiple channels of video programming.

6

programming." 47 U.S.C. § 522(13). In turn, "video programming" is defined in the Act as "programming provided by, or generally considered comparable to programming provided by, a television broadcast station." 47 U.S.C. § 522(20).

In short, broadcasters such as defendants ABC, CBS, NBC, and FOX create video programming. Cable operators such as Comcast receive video programming from local broadcast stations and other video programmers and distribute that video programming through a system of cable wires to service subscribers.[5]

This defamation claim should be dismissed against Comcast because Comcast is simply a distributor of the broadcast television signals about which Mr. Ceasar complains. Comcast cannot be liable to Mr. Ceasar under any circumstances because when Comcast retransmits a broadcast television signal, federal law requires Comcast to do so without altering the content of the video programming. Additionally, even the law did not require Comcast to retransmit the broadcast signals of local stations without altering the video programming originated by those stations, Comcast cannot be liable for defamation under the allegations of the Complaint. Mr. Caesar failed to allege that Comcast made or published any false or defamatory statement. Further, under the "conduit liability rule," Mr. Caesar cannot allege that Comcast, as a retransmitter of the signals of local broadcast stations, was at fault for retransmitting the statements of third-parties because he did not allege that Comcast had any input or control over the content of broadcast signals.

---

[5] An accurate analogy for Comcast's connection to individual viewers is a system of pipes, through which signals are distributed to individual televisions. *See Klimas v. Comcast Cable Communications, Inc.*, 465 F.3d 271, 277, 279 (describing cable service as the one-way transmission of video programming). Cable television is not the exclusive way to deliver local channel broadcasts, of course; non-cable subscribers may directly receive transmissions from local broadcasters free over the air.

1. **Plaintiff Cannot Prevail on his Defamation Claim Against Comcast Because Federal Law Prohibits Comcast from Altering the Local Broadcast Television Signals that it Retransmits**

While the elements for a defamation claim may vary among states, the Supreme Court has held that no defamation rule may impose liability on an actor without fault. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974). Following from this prohibition on no-fault defamation is the principle that "[o]ne who is required by law to publish defamatory matter is absolutely privileged to publish it." RESTATEMENT (SECOND) OF TORTS § 592(A) (1977).

Here, Mr. Ceasar complains that he was defamed by news reports on broadcast television stations. Federal law prohibits Comcast from altering the video programming in any broadcast television signal that Comcast receives from a broadcast station and redistributes to its cable service subscribers. As such, Comcast cannot be liable for defamation under the allegations in Mr. Ceasar's Complaint.

In Section 614 of the Act, Congress provided local broadcasters the right to require carriage from local cable operators. 47 U.S.C. § 534 (stating "[e]ach cable operator shall carry, on the cable system of that operator, the signals of local commercial television stations..."). When a cable operator such as Comcast carries a local broadcast station pursuant to this "must carry" obligation, the cable operator is statutorily required to carry the entire program schedule of that station (unless prohibited by certain FCC regulations) and to do so without altering the video programming transmitted by the station. 47 U.S.C. § 534(b)(3)(A), (B).

Local broadcast stations may decline to take advantage of the "must carry" provisions of the Act and instead grant cable operators the right to retransmit their video programming pursuant to retransmission consent agreements reached following arms-length negotiations.[6] In

---

[6] 47 U.S.C. § 325(b)(1)-(7) (stating that "no cable operator... shall retransmit the signal of a broadcasting station... except with the express authority of the originating station" and that "[t]he regulations required by subparagraph (A)

any event, whenever a cable operator retransmits the signal of a local broadcast station, they do so pursuant to a compulsory licensing scheme set forth in the Copyright Act. 17 U.S.C. § 111(b), (c). Under the express terms of the cable compulsory license, cable operators are prohibited by law from altering or changing "in any way" the signal of the originating broadcast station. *Id.*

Thus, if Comcast was involved at all in the broadcast news reports about which Mr. Ceasar complains, it was only as a distributor of local broadcast television signals of other defendants. And, whether Comcast carried those broadcast signals under "must carry" obligations or pursuant to a retransmission consent agreement, Comcast was prohibited by federal law from altering the signals it received from the broadcasters. As such, as a matter of law Comcast cannot be held at fault for the content of those broadcast signals and cannot have any liability to Mr. Ceasar on his defamation claim.

### 2. Plaintiff Fails to Allege the Elements of Defamation as to Comcast

Even if Comcast were not legally required to retransmit local broadcast signals without alteration, Mr. Ceasar's defamation claim must still fail under the general "conduit liability rule." Under D.C. law, a claim of defamation requires four elements: (1) the defendant made a false and defamatory statement concerning the plaintiff, (2) the defendant published the statement to a third party, (3) the defendant's behavior rose at least to the level of negligence, (4) either the statement was actionable as a matter of law or its publication caused the plaintiff special harm. *El-Hadad v. Embassy of the U.A.E.*, 2006 U.S. Dist. LEXIS 21491, *44 (D.D.C. March 29, 2006). Mr. Ceasar's allegations do not satisfy the first three of the elements as to Comcast.

First, Mr. Ceasar does not attribute any particular false or defamatory statement to Comcast. Mr. Ceasar's claims stem from alleged broadcast television news reports. However, as

---

shall require that television stations… make an election between the right to grant retransmission consent under this subsection and the right to signal carriage under Section 614 [47 U.S.C. § 543].").

discussed above, Comcast does not create broadcast television reports. As a cable operator, Comcast retransmits video programming created by third-party broadcasters such as ABC, CBS, NBC, and FOX.

Where a defendant has no input into the content of a program, no ability to change the program before broadcast, and no fault in the connection with the broadcast, there is no creative control or authority over the program and the defendant cannot be liable as a republisher. *Kapetanovic v. Cannell*, 2002 U.S. Dist. LEXIS 5489, at *18-19 (N.D. Ill. March, 26, 2002). In *Kapetanovic*, the court held that the owner of a local television channel "[could not] be held liable as a matter of law for the defamatory content of the [p]rogram," when a nationally syndicated true crime series that portrayed the plaintiffs as international arms smugglers was created by a third-party and merely broadcast on the defendant's local channel. *Id.* at *20.

Comcast is further removed from the creation of any defamatory network broadcasts than the local television channel was in *Kapetanovic*. Comcast also did not contribute in any way to the collection of information, the choice of tone, images, or narrative, or the final creative product of the allegedly defamatory programs. *Id.* at *19-20. Mr. Ceasar does not allege that Comcast exercised any editorial or creative control over the content of the local newscasts, or that Comcast retained discretion or opportunity to review the content of any local newscast retransmitted over its cable system. As such, Mr. Ceasar fails to allege that Comcast made or published the statements contained in local broadcast news reports that form the basis of his Complaint. Where the Plaintiff's complaint does not identify what statements by the defendant were false or defamatory, the complaint fails to allege sufficient facts to state a claim. *Gibson-Michaels v. Securiguard, Inc.*, 2007 U.S. Dist. LEXIS 33130, * 6 (D.D.C. 2007).

Further, Mr. Ceasar does not claim that Comcast was negligent in any way. Even if he had, he would be legally barred from satisfying this element of his claim by the conduit liability rule and the "wire service defense." Both embody the general principle that "[o]ne who only delivers or transmits defamatory matter published by a third party is subject to liability if, but only if, he knows or has reason to know of its defamatory character." RESTATEMENT (SECOND) OF TORTS § 581 (1977). There is no "conduit liability" for defamatory broadcasts in the absence of fault. *In Re Medical Laboratory Consultants*, 931 F. Supp. 1487, 1492 (D. Ariz. 1996). In the same vein, the wire service defense shields defendants who have reproduced an apparently accurate statement by a reputable publisher without knowledge of its falsity. *Winn v. United Press International*, 938 F. Supp. 39, 42 (D.D.C. 1996). Federal courts have ruled that the conduit liability rule and wire service defense immunize defendants who have had even greater opportunity and discretion to control defamatory content than Comcast exercises as a cable operator.

For example, in *Auvil v. CBS "60 Minutes"*, 800 F. Supp. 928 (E.D. Wash. 1992), the court held that a local broadcast television station affiliated with CBS was immune from liability for a defamatory program created by CBS when the local affiliate had both contractual discretion and three hours lead-time to edit the program after it was received from the national broadcaster. Other federal cases have held that local broadcasting affiliates, local television channel owners, and news collection and transmission services are not liable under the no-fault principle for any defamatory content they distribute that is created wholly by third-parties. *See In Re Medical Laboratory Consultants*, 931 F. Supp. at 1492 (holding that the wire service defense applied to a local television network affiliate who did not participate in any way with production of the defamatory program segment); *Kapetanovic v. Cannell*, 2002 U.S. Dist. LEXIS 5489, *19-20

(N.D. Ill. March 26, 2002) (holding that a company whose television channel acted as a "mere conduit" for a nationally syndicated program was entitled to the wire service defense); *Winn v. United Press International*, 938 F. Supp. 39, 45-6 (holding that UPI was not liable for defamatory statements in an article picked up from a local newspaper and distributed over its wire service because UPI had not contributed any original content to the story and had no duty to verify it).

As a cable operator under federal law, Comcast is indeed "a mere passive conduit" for the broadcasts that allegedly injured the Plaintiff. *See In Re Medical Laboratory Consultants*, 931 F. Supp. at 1492. As such, it cannot reasonably have a greater duty to insure the accuracy of retransmitted local newscasts than a news wire service has to insure the accuracy of local newspaper articles it individually chooses for distribution over its wire service. *See Winn v. UPI*, 938 F. Supp. at 45-6.

Mr. Caesar does not allege in his Complaint that Comcast knew or should have known that any news reporting by the broadcast television defendants was false and defamatory. Thus, under the facts alleged in the Complaint, Mr. Ceasar is legally barred from establishing the negligence element of his Complaint, and his defamation claim against Comcast should be dismissed with prejudice

**D.     The Complaint Should be Dismissed for Insufficient Service of Process**

In addition to the fatal substantive flaws of the Plaintiff's Complaint against Comcast, he has also failed to meet the procedural requirements for service to Comcast. Under Fed.R.Civ.P. 12(b)(5), the court may dismiss a complaint for ineffective service of process if the Plaintiff fails to establish that he has properly served the defendant pursuant to Rule 4. *Lindsey v. United States*, 448 F. Supp. 2d 37, 42 (D.D.C. 2006) (citing *Light v. Wolf*, 259 U.S. App. D.C. 442 (D.C.

Cir. 1987). The party who requests service has the burden of establishing that service was valid and must show that the procedure employed satisfied the requirements of Rule 4. *Id.* (quotation marks and citations omitted).

Rule 4(m) of the Federal Rules of Civil Procedure requires that service of the complaint and summons must made upon a defendant within 120 days after filing of the complaint.[7] The Plaintiff's complaint was filed on December 14, 2006. (Complaint at p.1). Comcast received the Plaintiff's summons and complaint on or about June 5, 2007. Over 170 days elapsed between the date the Complaint was filed and the date that service was made. Thus, service was 50 or more days late and violated Rule 4(m). The Complaint should be dismissed, therefore, on procedural grounds under Rule 12(b)(5) for insufficient service of process. *See Stinecipher v. United States*, 239 F.R.D. 282, 283 (D.D.C. 2006) (holding that deviation from technical Rule 4 process requirements was grounds for dismissal of the complaint).

---

[7] If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).
FED. R. CIV. PRO. 4(m).

## III. CONCLUSION

**WHEREFORE**, for all the foregoing reasons, Comcast respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

/s/ Adam S. Caldwell
Adam S. Caldwell (Bar No. 012619)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 200
Washington, D.C. 20006
Phone: (202) 973-4200
Facsimile: (202) 973-4499
Email: adamcaldwell@dwt.com

**Attorney for Defendant Comcast Corporation**

Date: June 25, 2007

## CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Comcast Corporation's Motion to Dismiss was served by first class mail, postage prepaid, on June 25, 2007 to:

Maurice Ceaser  
#208-880  
1901 E Street, S.E.  
Washington DC, 20003

Maurice Ceasar  
# 09747-007  
USP Canaan  
P.O. Box 300  
Waymart, PA 18472

                                                                 /s/ Adam S. Caldwell  
                                                                 Adam S. Caldwell

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAURICE CEASAR<br><br>Plaintiff<br><br>v.<br><br>CBS HEADQUARTERS COMPANY, *et al.*,<br><br>Defendants | Case No. 06-2140 RMC |

**ORDER**

**UPON CONSIDERATION** of Defendant Comcast Corporation's Motion to Dismiss, the Memorandum of Law in support thereof, any opposition to the Motion to Dismiss, and the entire record in this matter, it is this ____ day of _____, 2007, hereby,

**ORDERED**, that Comcast's Motion to Dismiss is **GRANTED**, and it is further,

**ORDERED**, that the Complaint against Comcast Corporation **IS DISMISSED WITH PREJUDICE**.

_____
Judge, United States District Court

Copies To:

Adam S. Caldwell
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue, NW
Washington, DC 20006

Maurice Ceaser
#208-880
1901 E Street, S.E.
Washington DC, 20003

Maurice Ceasar
# 09747-007
USP Canaan
P.O. Box 300
Waymart, PA 18472

WDC 705318v1 0107080-000052