UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

AUG - 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MAURICE CEASAR

    Plaintiff,

VS.

CBS HEADQUARTER COMPANY et al.,

    Defendants.

Case No. 02140-06-PLF

**MOTION TO HAVE JUDGE Paul L. Friedman
TO REVIEW 23-110 MOTION IN WHICH GROUND'S STATEMENTS
HAD BEEN MADE IN CRIMINAL CASE BY PLAINTIFF IN REGARDS
TO WHAT ABSOLUTELY HAPPENED FROM APRIL 17, 2006 TO JANUARY 11, 2007,
TO BE STATED IN THIS CIVIL COMPLAINT OR HEARING AS FOR A RULING**

I, hereby ask that Honorable Judge Paul L. Friedman can review enclose documents that I, Plaintiff feels can be of some help in Current Civil Case, and to help give some idea of how I had to deal with criminal proceedings in the lower Court as to my Innocence.

This may connect to my Civil Complaint due to a lot of Irresponsibilities and Ineffectiveness of Counsel which caused me to be pressured in taking a plea bargain or else this matter would have dragged on in trial. Your Honorable Paul L Friedman, sir I understand my lengthy criminal past, However, this does not in no way connects with what Defendants Broadcasted on national T.V. of Televised Interview with Paul Rosstead and his personal opinions of me, taking something from dozens of Church properties nor does it show that this News Broadcast which televised was confirmed by there Local News Stations Reported in <u>April 2006, and June 2006.</u>

1

I, Maurice Ceasar, Plaintiff asked this Honorable Judge for his time and attention to review in regards to this **02140-06-PLF Civil Case**.

This can only help in this current matter to give this Court a clearer understanding as to why I am in this Court to move forward with this Civil Action by the Will of your understandings and Decision.

May you hear my Humble cry for this Courts Justice for relief.

### CERTIFICATE OF SERVICE

I, the undersigned, herby certify that a true and correct copy of the foregoing was served by first class mail, postage prepaid, on <u>July 30, 2007</u>. Mail to the Court address and in lieu of copies for all Defendants.

Respectfully Submitted,

*/s/ Maurice Ceasar*
Maurice Ceasar
Reg.No. 09747-007

2

D.C. SUPERIOR COURT

Maurice Ceasar

VS

United States

Case No. CF3-9216-06
CF3-2917-06

### 23-110 To Vacate, Set Aside or Correct Sentence and Judgment Motion

I.  **Parties and Jurisdiction**

   1. Name: **Maurice Ceasar**

   2. D.O.B.: **2/8/61**

   3. D.C.D.C.: **208 880**

   4. Fed. No.: **0**

   5. A. Status of Parole: **0**

      B. Address Home: **0**

      C. Address Current: **CCA/C.T.F. 1901 E St. S.E. Washington, DC 20003**

   6. Any Other Charges: **No**

II. **Case History**
   1. Enter the **Case Number** of the sentence and judgment you want to vacate, set aside or correct only: **CF3-9216-06 & CF3-9217-06**

   2. Name of the judge who sentenced you: **Honerable Judge Herbert B. Dixon**

   3. Name of Attorney at trial: **CJA James E. Williams**

   4. Name of Attorney at sentencing: **0**

   5. Date of sentencing: **January 11, 2007**

   6. Term of sentence: **CF3-9216-06 (24 Months)./ CF3-9217-06 (24 Months) To run consecutively**

   7. How were you found guilty: **Guilty Plea: X** or Guilty by Jury:

8. Found guilty by Judge? Yes _____ or No ____X____

9. Did you appeal your conviction? Yes _____ or No ____X____

10. Other than direct appeal to the Court of Appeals, have you filed:

   A. Any other challenges to this sentence or judgment?
      Yes _____ or No ____X____

   B. Petition for Certiorari of the U.S Supreme Court?
      Yes _____ or No ____X____

   C. Any motion to correct sentence? Yes _____ or No ____X____

   D. Any Vacate or Set Aside motions? Yes ____X____ or No _____
      (This one that I am filing)

   E. Another Pleading, Explain: _Reduction of Sentence / Alternative Motion_

   F. Is this the only motion for this Sentence and Judgment?
      Yes ____X____ or No _____

III. Grounds for Release:

These are the grounds on which I am basing my facts to have this matter corrected/vacated

Grounds: Subject One – Before My Arrest

On or about April, May and June 2006, a Mr. Paul Rosstead placed pictures of me around the Washington, DC metropolitan area trying to get me arrested. Just prior to that, Mr. Paul Rosstead, Administrator at a Calvary Baptist Church renovation site had taken my picture, my W-2 Federal tax forms and my cellular phone without my permission. When I asked for them back, he ignored my request and had his foreman shut the door in my face and lock it. He stated in his affidavit for my arrest that I took something from that property. He took my personal information and used it on line to email information to Television News Stations, who reported along with him that I was wanted for a large string of thefts and burglaries in the Metropolitan DC area. This was not true. I had gone to the Calvary Baptist Church renovation site because I had heard of some daily work that was available there.

Grounds: Subject Two – My Arrest

On May 9, 2006, nearly 30 days later, following some hospitalization, I was arrested on numerous charges ranging from unlawful entry to theft and receiving stolen property. I was placed in the DC Jail and then taken to court on May 24, 2006. I was charged by the U.S. Attorney Prosecutor with two counts of Burglary II. These charges were not on the arresting officer's Metropolitan Police Department report but was highlighted by the prosecutor to hold me in prison without bond. He/She stated that more burglary charges were pending. I was therefore held without bond although no more charges were brought forth. Judge Ronald A. Goodbread assigned the case to Judge Herbert B. Dixon, Jr. who then assigned Attorney James E. Williams as my court appointed attorney. After meeting with attorney Williams, I verbally requested to have him removed from this case due to his failure to honestly and appropriately represent me. I received no response to this request.

Grounds: Subject Three – Debriefing Pattern By Attorney (Assisting Prosecutor

May 23, 2006. At the early part of the preliminary stage, Attorney James E. Williams told me about the news publicity coverage and that he thought that I did commit the string of thefts and burglaries reported and charged, and he wanted me to admit by debriefing with the Government in order to close a number of cases. He came to me only to tell me he had no case strategies for me and he coerced me not to take part in the preliminary hearing and I should waive it. Attorney Williams had me confused by his type of "representation" which caused me not to trust his very words about representing me. Mr. Williams never came to me with support to have this case investigated thoroughly from a defense point of view. He just wanted me to debrief from the time I met him through the five or six times he came to CCA on legal visits and through the times that I was asking Judge Dixon to excuse this attorney from representing me. These requests were denied several times over a period of seven months. After about the sixth month, they stopped trying to debrief me and handed down an indictment under the two burglary charges that were not on the police report but were provided by the prosecutors in two cases to establish that a criminal matter had occurred.

Grounds: Subject Four – Letters/Motions in Requesting New Counsel/ Illegal Charges/Letters That Can Be Reviewed in Criminal Files

During the pretrial stages of these cases, I wrote nearly a dozen letters to the assigned judge, some of which were answered. Motions Pro'se to have new appointed counsel was answered but denied. Whenever I came to court, the judge did not believe that this attorney's incompetency was demonstrated. I was apparently judged due to the personal concerns that the supposed crimes were carried out at a church environment and my attorney had the judge's attention to not remove him from the case. I truly expressed my concerns with getting this attorney off the case to my judge. However, the prosecutor and the attorney had Judge Dixon's attention for about seven months that there were more charges to be filed, but there were not. Judge Dixon failed to see through their schemes to create reasons to have him again delay preparing me for any pretrial stage hearings or for trial until he was convinced that there were no more charges and that we could move on with other proceedings of these cases. This was after seven months of obscurity and

misled interest that I, Maurice Ceasar, would not debrief and that Judge Dixon would not provide relief through appointment of new counselor changes, or for Bond or Halfway House decision.

Grounds: Subject Five – <u>Arresting Charges Were Less Included Offenses, Not Burglary II Cases</u>

I never burglarized any building, properties or churches. I entered these two places with the public and was around the general public at all times. When I was arrested, the charges only read lesser-included offences in both cases of unlawful entry, theft II, receiving stolen property and theft. When I got to court, the charges, I believe, jumped up to Burglary II due to a criminal history check and the prosecutor's office still believing what Mr. Rosstead announced on the local television stations. This was to step up all other potential charges if I would have debriefed. These also would have been bogus charges, since I did not commit any of the additional "potential charges". I believe the government wanted me to debrief to other people's charges simply to get other cases off the books. This is apparently why my attorney kept trying to force me with that language rather than trying to assist in defending me. Once again, this attorney, Mr. James E. Williams did nothing but ignore me and try to confuse me every time we met at the CCA facility or in court. He was acting in a very incompetent manner in providing representation for me. The affidavits provide clear and convincing detail of theft charges other than Burglary II. Not one time in the police MPD report did witnesses state that I burglarized any dwellings, churches or other buildings or that I was out of public view while I was on the premises of the place where these two burglaries supposedly occurred. I asked this Honorable Judge to correct the misuse of those charges but I got no response.

Grounds: Subject Six – <u>Case to Support This 23-110 Motion of "Grounds: Subject Five"</u>

Your Honor, under 22-3302 or 22-3102 (formerly) unlawful entry on property would have been considered ulterior motives if any charge would have been applied during an arrest. May this case be in support of my cause to have this case dismissed. I would like to cite the case of U.S.A. VS Roy L. Thomas Jr., 444-F 2d 919-No. 23975, argued December 18, 1970 and decided April 26, 1971. In parts of this case, it states that in U.S.C. Appeals D.C. Circuit Court that a defendant, John Lewis Smith, Jr. was convicted in the U.S. District Court for the District of Columbia of statutory burglary and he appealed to the Court of Appeals, McKinnon, Circuit Judge, held that the indictment charging that the defendant entered a dwelling with intent to commit a criminal offence therein in violation of the burglary statute was insufficient to charge first degree burglary since it did not identify that the defendant intended to commit the offence upon entry. However, the indictment was sufficient to charge unlawful entry. The burglary charge was reversed.

In my case, the fact that the police reports and affidavit statements did not claim that I entered the building with the intent to commit a criminal offense, the charges were not sufficient to charge me with Second Degree Burglary. I entered the building merely to

apply for a job but the fact that some equipment had been stolen, was an excuse to take my personal papers when I went to the restroom and use my social security number and other information to determine that I had a prior prison record. Using this data, a bogus case was invented that was sent to the local television stations and newspapers along with a photograph of me taken before I was thrown out of the building.

Grounds: Subject Seven – Prosecutorial Misconduct and Ineffectiveness of My Attorney's Support.

The prosecutors, Margaret Sewell and Steven Riddell, came into this case with the intention to give the court the viewpoint that I burglarized these properties and they were both knowledgeable about the news media coverage of the misleading information given by Mr. Paul Rosstead but wanted to use this libelous information to have me close cases for their purposes. There was never a "String of Charges" committed by me. This matter today only leads to the brazen lies concocted by the story that Mr. Paul Rosstead stated on the news broadcasts to maliciously have me and my past criminal history records exposed and misused.

Again, these prosecutors knew of the contents of the news broadcasts by one of their own, Mr. Channing Phillips, U.S. attorney spokesman who reported along with Mr. Rosstead to the Washington Times Newspaper (June 8, 2006- Metro Section "Link to Church Theft Topic"). All of this was brought with personal interest in the two cases into the Honorable Judge H.B. Dixon courtroom. They had the Judge thinking that more charges were still to come.

There were blotted out bench conferences, first with prosecutors and then with my attorney Mr. James E. Williams and me. Mr. Williams had already confused my understanding of why he was not representing me honestly or fairly. Mr. Williams knew of the news media exposure. When he stated it to me, he knew that I had told him that I did not commit any "string of thefts". He had doubts about my statements and from day one of his representing me, he held those doubts over my head.

I tried continuously to have another attorney assigned and it was denied over 5 to 7 times during the court pretrial stages and proceedings by the assigned judge. I filed motions and letters to Judge Dixon over the period of May 2006 through December 2006 concerning the ineffectiveness of counsel. The court records can show that Judge H. B. Dixon denied my request for new counsel on June 8, 2006, July 19, 20 and 25, 2006 and again on August 17, 2006. There were still more but not on the record. In most of these denials, Judge Dixon said that I did not have enough grounds to get a replacement attorney, although I continued to recite the law concerning ineffectiveness of counsel under several letters and circumstances, i.e. Rule 11(11-2601, 11-2602), Rule 32 and eventually 23-110. I believe Judge Dixon continued to deny my request, because the Government had his attention due to the media broadcast story of multiple thefts and burglaries. I believe the Judge was interested in these cases and asked me who I was at these particular pre-trial stages and hearings. His preoccupation with the false and misleading news stories alone plus the information in this 23-110 motion should be adequate to vacate, set aside, correct or cancel my sentence.

Grounds: Subject Eight – Plea Bargain and Pre-Sentence Reports

On August 30, 2006, I, Maurice Ceasar, took a Plea Bargain out of duress to two counts of Burglary II and one count of Theft II. I accepted this plea after being convinced by my attorney that he had no strategies to prepare for trial and that he believed that I should take the plea as the method of receiving the lesser of possible sentences. I later chose not to accept the plea bargain since I did not commit the offences. I decided to go to trial and have a trial date set. Once again in the back of the courtroom, Mr. Williams came to me forcing me to take the plea. With that kind of pressure coupled with his past coercing during his legal visits with me, he made me think that I really did not have a choice and if I had gone to trial, he would have dragged his feet (so to speak) and let the prosecutor win the case. I was confused and not ready to deny the plea bargain. After I accepted the plea, I was scheduled for sentencing on October 26, 2006. However, by then, I put in a **rule 32(E) to withdraw the plea before sentencing and again in lieu of the ineffectiveness of counsel**. On October 25, 2006, this withdrawal was brought to the Judge's attention and I was asked whether I wanted to go on with the withdrawal, which would take a long time to recover and reverse the data from the transcripts or I could have some alternatives in this case. The Judge gave me the choice of the withdrawal or to accept some alternatives. Judge Dixon expressed his concerns for other alternatives that he had seen since I had been incarcerated so much of my life. I believed that this may be the help I needed through a residential inpatient transitional drug program, so I did not make the choice to withdraw. I went with the choice to seeing what alternatives I could find and bring to the Judge's attention that can help within the pre sentence period and sentencing date.

There had been a lot of controversy in regards to the pre sentence report in that most of the information was old and inaccurate. The CSOSA reporter, Ms. Wendy Covey, rushed this and I believe was coerced by my ineffective attorney during most of the processing of certain of the reports. She was told about the types of burglaries that supposedly took place and began personalizing her report rather than staying on a professional level in accumulating the data for this report correctly. Even her recommendation at the end of the report was outrageous and unevenly biased. (I request a copy of the pre sentence report be made as an exhibit to this document). My family history, criminal history and treatment history in the pre sentence report were misleading and incorrect, however it **was used to sentence me**.

Grounds: Subject Nine – Before Sentencing/Alternatives

On October 25, 2006 and again on December 4, 2006 sentencing was rescheduled to take place on January 11, 2007. During the months of October, November and December 2006, I reached out to assist this Honorable Court and Judge with a large number of potential treatment programs and a Psychological Evaluation. Apparently either the Doctor or the reporter did not respond to the court's order since the reporter had concerns that something was inaccurate with the request for a psychological evaluation. However, the request for other alternatives was up to me to gather names and responses from potential programs prior to the sentencing date of January 11, 2007. These responses

were sent to the Honorable Judge Dixon. The following were the programs that were available:
1. Coalition for the Homeless
2. Salvation Army
3. Ms. Quaryles C.I.T. Assessment
4. APRA
5. Hi DtA C.T.I.
6. CAG CSOSA
7. Gospel Rescue Ministries
8. PAP Inc.
9. Central Union Mission
10. Clean and Sober
11. Re-Entry Sanction Center
12. Rubicon Drug Treatment & Housing
13. Peniel Drug Treatment

All of these drug treatment programs are Inpatient/ Residential facilities and could provide me with permanent housing and aftercare.

Your Honor, I was reaching out for a chance and a change in this matter for alternatives. I was scheduled for sentencing at 9:30 am. At that particular time, I had written Judge Dixon about 14 letters with alternatives and with drug treatment acceptances attached. Also on that day I presented certificates for life skills/Etap program in completion along with other drug treatment acceptance letters. These letters were not discussed in court during sentencing nor did the Judge mention to the court that these alternatives or acceptance letters existed. The Judge did mention the Psychological Evaluation Report, which he had not yet received and wished to continue this matter of the sentence. But by then the attorney requested to speak because I had no say in this request, and after formalities, Judge Dixon handed down his sentence on the charges of Burglary II and Theft which left me doing two consecutive 24 month sentences plus 90 days and with 3 years supervised release.

Your Honor or to whom it may concern.

I, Maurice Ceasar, Pro'se wish to make clear what I believe is evident behind these two cases. At the beginning, there was so much controversy that it distorted any possibility of a fair outcome. I entered the premises of the reconstruction site along with other persons looking for employment. Mr. Rosstead took my personal records folder, which I left on the chair in the seating area when I went to the restroom. When I came back, I was rushed toward the front door as Mr. Rosstead and the foreman took my photo without my permission and then deprived me from retrieving my folder containing my W-2 tax form papers and my cell phone. They then forced me out the door without returning my personal data. Sometime later, Mr. Rosstead used my W-2 information to enter into the police criminal data network and he displayed my photo around the Metropolitan area. When the database identified me as one recently released from prison, the assumption was that I was guilty of taking anything that was missing. Mr. Rosstead then took my

photograph and delivered it to the television media and the newspapers claiming that I was responsible for a string of robberies and burglaries in numerous churches and buildings in that area of the city. These reports resulted in my arrest status.

The prosecutor, my attorney and Mr. Rosstead were in agreement that my presence in the church reconstruction area where some items apparently had been stolen was suspicious due to the fact that my name and photograph had appeared in local television and newspaper articles concerning a string of robberies and burglaries and that I had a past criminal history. The fact that the television and newspaper articles were planted by Mr. Rosstead was not a consideration in identifying the truth nor was the fact that in both cases, I entered the premises along with other people. I was only there to seek work. Mr. Rosstead took information from my personal papers that were in my folder and went shopping around with my data and then alerted the Metropolitan Police Department about the criminal matter and my criminal history was then retrieved. Then an erroneous story linking me to church thefts was given to local news stations.

The response of the U.S. Attorney and my attorney was an immediate supposition that I must have been guilty of anything they wanted to claim even if they had no evidence that I had done anything wrong. The prosecutor, supported by Mr. Rosstead's claims and my attorney who believed the media stories essentially worked together to convince the court that I must be the perpetrator of the stolen material.

During the pretrial stages of these cases, there were attempts to get me to plea or be served with numerous allegations inferred by the television media and newspapers of infractions other than the accusations made by Mr. Rosstead at the church reconstruction site. As late as January 11, 2007, the prosecutor stated that in at least one of the cases, Mr. Ceasar did not take anything, but none of that made any difference during sentencing.

In this 23-110 Motion, I am asking the court to look at the issues and reflect upon the lack of evidence presented by the prosecutor and the willingness for my counsel to accept any charges that can bring this case to a close. Although the prosecutor seemed to think that the longer that they could delay my trial, the better chance they had of more charges that could be brought before the court. The delays were used to get me to take a debrief to other people's criminal charges, none of which were ever found or presented. Eventually I was forced to accept a plea bargain for burglary II charges that I did not commit and were not on the original affidavits of police reports. These charges were lesser included offences in the police report for the events that occurred. My attorney wanted me to be charged to the highest of the sentencing guidelines, due to his feel for this as a high profile matter. He did not want or expect the judge to give such a low guideline sentence or for a drug treatment alternative. He wanted me only to be psychologically evaluated and reported by a psychiatrist as mentally disturbed. The psychiatrist did not find a problem and did not present the report to the judge because she was being coerced by phone calls from my attorney, James E. Williams, who was trying to persuade her to provide a negative report.

Certificate of Service

I, Maurice Ceasar, hereby have expressed the truth about this matter in order to assist in having this Honorable Court see that this matter has caused a lot of mixed messages and libelous accusations about me from the information presented to the court by my court appointed attorney and the government prosecutor.

I, Maurice Ceasar, Pro'se, ask that this Honorable Court and Judge reconsider and offer some type of relief or alternative to correct, vacate or set aside this sentence due to the unfairness and ineffectiveness of counsel. On this second day in the month of April, 2007, I ask this court under Pro'se matters, may you grant some relief so this matter can be resolved fairly and respectfully.

July 30 2007
Date

Maurice Ceasar